**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **PHEENIX USH LLC** | ) | |
| **D/B/A SPIN** | ) | Case No. 2:24-cv-4290 |
| 382 NE 191st St PMB 20388, Miami, FL, | ) | |
| 33179, | ) | Judge _____ |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **VERIFIED COMPLAINT** |
| | ) | |
| **CITY OF COLUMBUS** | ) | |
| 90 West Broad Street | ) | |
| Columbus, OH 43215; | ) | **JURY DEMAND ENDORSED** |
| | ) | **HEREON** |
| **CITY OF COLUMBUS DEPARTMENT** | ) | |
| **OF PUBLIC SERVICE**; and **KELLY** | ) | |
| **SCOCCO,** in her official capacity as | ) | |
| **DIRECTOR OF PUBLIC SERVICE** | ) | |
| 111 N. Front Street | ) | |
| Columbus, OH 43215, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## INTRODUCTION

Last week, the City of Columbus ("City") decided that residents and visitors will not be allowed to choose their micromobility service provider (*i.e.*, scooters, e-bikes, and other shared mobility devices). Beginning January 1, 2025, the only "choice" for the next three to five years will be to use VeoRide Inc. d/b/a Veo ("Veo"), and only Veo. Veo will be new to the area. It has not done business here before. The City will receive a share of the proceeds of each Veo fare charged without market competition. If something happens to Veo or if it suffers service interruptions, there will be no immediately available alternative service providers.

Plaintiff Pheenix USH LLC d/b/a Spin ("Spin") has been operating here since 2019. Residents and visitors already use Spin's micromobility services. Spin respectfully submits that a

single provider system is not in the best interests of residents and visitors. The City granted that monopoly to an "exclusive" micromobility service provider by: (1) **not** considering information that the City said it **would** consider, (2) **considering** information that the City had **not** said that it wanted to consider (*i.e.*, unannounced evaluation criteria), and (3) not following the City's procurement rules.

Even if a monopoly in Columbus were a good thing, Spin achieved the highest score under the City's announced metrics. But in the end the City decided not to score the Location of Lead Offeror Form ("LLO Form") that the City had originally identified was an important consideration that needed to be scored. The result of the City's procurement efforts is an improper contract award, an impermissible monopolistic restraint of trade, an unfair and irreparably harmful removal of Spin from the Columbus market, and public detriment.

When Spin asked the City to reconsider and to allow more than one service provider, one of the City's representatives replied, "we get sued all the time."

For its Verified Complaint for Temporary Restraining Order and Preliminary and Permanent Injunction against Defendants, Spin alleges and states:

## THE PARTIES

1.     Spin is a Delaware limited liability company with its principal place of business located at 161 Bay Street, Suite 2300 Toronto, Ontario M5J 2S1, Canada. Its mailing address is 382 NE 191st Street, #20388, Miami, Florida 33179.

2.     Spin provides micromobility services for shared e-bikes and e-scooters in cities and universities throughout the United States, including the City of Columbus.

3.     Spin has one member, Blue Jay Transit Inc., which is a Delaware corporation with its principal place of business located at 161 Bay Street, Suite 2300

2

Toronto, Ontario M5J 2S1, Canada. Its mailing address is 382 NE 191st Street, #20388, Miami, Florida 33179.

4.　　　The City of Columbus Department of Public Service ("Department") delivers city services and manages the City's transportation infrastructure. It is a Department of the City, which in turn is a municipality subject to Ohio's Constitution, laws, rules, and regulations.

5.　　　Kelly Scocco is the Director of Public Service ("Director") responsible for overseeing and directing the Department and is named in that capacity.

## JURISDICTION AND VENUE

6.　　　This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

7.　　　Considering Spin's investment in equipment and personnel in Columbus, and Spin's operations in Columbus, Spin will suffer economic losses well in excess of $75,000.00, exclusive of interest and costs, if Columbus is permitted to force Spin out of the market and restrict the area micromobility service providers to just Veo.

8.　　　Spin is a citizen of Delaware and Canada, and Spin's single member is likewise a citizen of Delaware and Canada. Defendants, as political subdivisions and their officers, are citizens of Ohio.

9.　　　This Court also has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 because it concerns federal questions arising under the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.* This Court has supplemental jurisdiction over the state-law claim under 28 U.S.C. § 1367 because the claim is part of the same case or controversy as the federal questions before the Court.

10. This Court has personal jurisdiction over Defendants because they are governmental bodies and officers located in the State of Ohio.

11. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred in Franklin County, Ohio, in this judicial district and division.

## GENERAL ALLEGATIONS

12. Since 2018, the City has had an annually renewing permit program for Shared Mobility Device ("SMD") vendors to operate in the City.

13. Vendors could obtain a 904 Right-of-Way Lease and 903 Occupancy permit and renew the permit annually if they paid certain fees and filled out certain forms.

14. Spin requested and obtained such a license and permit to operate in the City as early as 2019.

15. Since then, the City has regularly renewed Spin's permission to conduct its SMD business in the City, and Spin has continuously operated in the City.

16. As of the summer of 2024, there were three deployed SMD vendors actively operating in the City.

17. But on June 27, 2024, the Department shifted and issued a Request for Proposals ("RFP") from vendors to manage, operate, and expand the City's shared micromobility system.

18. A true and accurate copy of the RFP is attached and incorporated as **Exhibit A**.

19. The RFP announced that proposals would be evaluated in accordance with Columbus City Code, Title 3, Chapter 329.

20. Through its procurement process, the Department would select "one or more vendors" to operate shared mobility devices, such as electric scooters and bicycles, within the City for a minimum of 3 (and up to 5) years starting on January 1, 2025.

4

21.     The RFP specified evaluation criteria pursuant to which the City would award bidders points based on its evaluation of a bidder's: (1) Project Team (10 points); (2) Project Manager (10 points); (3) Past Performance (10 points); and (4) Understanding of Project/Project Approach (70 points awarded based on six sub-categories). *See* **Exhibit A**, Sec. 7, "Evaluation Criteria."

22.     The RFP also announced that the City would evaluate an LLO Form and award points based on the operator's location as follows: 10 maximum points for Columbus-based businesses with an executive officer in Columbus, 7 points for Franklin County operators, 5 points for operators located in an adjoining county, 3 points if the operator was located in Ohio, and 1 point for operators outside Ohio. *See id*., LLO Form.

23.     Spin timely submitted a complete response to the RFP, as did five other bidders.

24.     A true and accurate copy of Spin's response to the RFP is attached and incorporated as **Exhibit B**.

<u>**Results of the Evaluation Process**</u>

25.     The Evaluation Committee invited the three highest scoring vendors, which included Spin, to interview between October 10, 2024 and October 21, 2024.

26.     The field was narrowed to two vendors: Spin and Veo, both of whom were sent additional questions to answer via email.

27.     After the answers to the final questions were provided, the Evaluation Committee met to discuss those responses on October 31, 2024, and the scores were adjusted based on presentations and interviews.

28.     On November 13, 2024, Spin received a notice of non-award from Defendants.

29.     A true and accurate copy of the notice is attached and incorporated as **Exhibit C**.

30.     The notice informed Spin that it was not selected for the contract and that the City would be entering into further contract negotiations with Veo and no other bidder.

31.     Final scoring of the bids showed Spin was awarded 87.6 points, while Veo was awarded 91 points, a difference of only 3.4 points.

32.     The problems with how Defendants evaluated and scored Spin's and Veo's proposals include, but are not necessarily limited to, the problems described in this Complaint.

33.     Despite the RFP stating the LLO Form would be used in the evaluation process, Defendants later chose to not use it as a basis for scoring or awarding any points.

34.     Under the RFP's stated criteria, Spin qualified for an additional 7 points under the LLO Form.

35.     Veo qualified for a maximum of 3 points under the LLO Form because Veo is located in Ohio but does not currently operate in Franklin County or in any adjoining counties.

36.     Because Spin was only 3.4 points behind Veo in the evaluation process, had Defendants adhered to the stated evaluation criteria in the RFP and awarded points under the LLO Form, Spin would have received a higher score than Veo.

37.     In addition to disregarding stated evaluation criteria, Defendants also applied unannounced evaluation criteria, including the performance in a different market (Dublin, Ohio) of a separate and different company from Spin—Blue Jay Transit USFM LLC d/b/a Bird ("Bird").

38.     Bird did not submit a bid in response to the RFP.

39.     Bird's operations in Dublin have no connection with Spin's operations in Columbus.

40.     Defendants also considered past corporate restructuring issues—criteria that appear nowhere in the RFP and which in no way impact Spin's operations in Columbus.

41. Consideration of these criteria by Defendants as to Spin exceeded the scope of the RFP's criteria set forth in Section 7.4.3, titled "Proposed Financial Model," in that Defendants assessed the long-term financial solvency of Spin (but not of any other bidder)—a criterion not contemplated in Section 7.4.3.

42. Had Defendants applied the stated Proposed Financial Model criteria in the RFP, which focused on plans for funding shared mobility parking or docking solutions and other infrastructure, Defendants would have seen that Spin's bid excelled, offering $263,000 in upfront infrastructure investments and an estimated $290,000 annual revenue share.

43. By contrast, based on evaluator comments, Veo offered far less upfront investment (only $30,000), no revenue share, and a per vehicle fee.

44. Spin further included a profit and loss statement in its proposal, which showed the long-term financial stability of its Columbus operations; instead of evaluating this financial data, Defendants considered corporate restructuring unrelated to Spin's Columbus operations.

45. Instead of considering Spin's proven financial performance, Defendants favored Veo—a smaller, less capitalized company with significantly less financial stability than Spin and no track record in Columbus.

46. Defendants did not score the six sub-categories of the "Understanding of Project" metric, and because these sub-categories were not scored, it is not possible to quantify exactly how Defendants' erroneous consideration of Spin's perceived financial condition affected Spin's overall score.

47. Specifically, the fact that Defendants did not separately score the six sub-categories of the "Understanding of Project" metric means (a) Spin and the public do not know how much consideration was given to each sub-category, and (b) Spin and the public have no way of knowing

whether Defendants properly weighted the subcategories according to the point allocations stated in the RFP document. By not grading and weighting each subcategory separately, Defendants violated their own stated criteria, instead allowing each evaluator to substitute the evaluator's own point allocations for each subcategory, leading to a biased and unfair process.

### Spin Requests Reconsideration and the City Responds

48. On November 21, 2024, Spin, through its Senior Director of Partnerships and Policy, John Lankford, sent a letter to Defendant Scocco asking Scocco to reconsider and reject the Evaluation Committee's recommendation and permit Spin to operate as a vendor in addition to Veo.

49. Spin's letter outlined the Evaluation Committee's errors as alleged in this Verified Complaint.

50. Spin asked to be allowed to operate alongside Veo out of Spin's strong belief in the importance of competition, its willingness to compete with Veo, and despite the fact that Spin would have won the contract and been the single operating vendor had Defendants scored the LLO Form and followed the evaluation process they advertised and committed to in the RFP.

51. Spin requested that the Department not remove Spin from Columbus and instead allow Spin to continue operating after January 1, 2025, pending a resolution of the dispute between Spin and the City about not awarding a contract to Spin and instead awarding an exclusive contract to Veo.

52. On December 11, 2024, Spin met with Department representatives to discuss the non-award letter, outline its concerns with the selection process, and highlight that awarding an exclusive contract to a smaller industry player with no current operations in Columbus (like Veo) was not in the best interests of Columbus residents.

8

53. At Spin's December 11, 2024 meeting with Defendants, a representative of the Department refused and retorted, "we get sued all the time."

54. On December 9, 2024, the City Council passed a consent agenda on an ordinance authorizing the Director to enter into agreements with Veo and to accept payments from Veo pursuant to a proposed revenue sharing agreement.

55. On December 11, 2024, the City Council took final action on and issued that ordinance.

56. According to the ordinance, under that agreement, Veo would be obligated to pay the Department an annual per device fee and an additional per trip revenue share for rides initiated within City limits.

57. The ordinance was based on the decision by Defendants—namely by the Director—to select Veo because "Veo received the highest score from the Evaluation Committee."

58. The ordinance characterizes itself as an "emergency measure" because "it is immediately necessary to authorize the passage of this legislation so implementation of the project can start at the beginning of 2025, to align with the expiration date of the current SMD permits, and to ensure a more seamless transition for the traveling public, all for the immediate preservation of the public health, peace, property, and safety."

59. The ordinance failed to disclose that the purported emergency—expiring permits—was entirely of the Director's and Department's intentional making: they refused to extend any permits, including those of Spin's, as they have regularly done in the past.

60. Additionally, Veo is not even expected to begin operating until March 2025 because it needs time to set up its operations.

61.     Spin learned, on December 13, 2024, that Defendants formally refused to permit Spin to continue to operate past January 1, 2025.

62.     This means Columbus residents will lose access to their chosen transportation option between January 1, 2025 and March 2025, when Veo is expected to begin operations.

## COUNT I
## Violation of Competitive Bidding Laws

63.     Spin incorporates by reference the allegations in the preceding paragraphs of this Verified Complaint as if fully rewritten herein.

64.     The City claimed in its RFP that the "Revised Code of the State of Ohio, the Charter of the City of Columbus, and all City ordinances insofar as they apply to the laws of competitive bidding, contracts, purchases, and wage theft prevention, are made a part hereof."

65.     To the extent those competitive bidding laws can apply here, the City violated them.

66.     Columbus Code of Ordinances Section 329.02 establishes a purchasing and procurement system to "maximize the purchasing value of public funds and provide fair and equitable treatment to all persons involved in public purchasing" and governs the evaluation process of public contract bids. Columbus, Ohio Code of Ordinances, § 329.02.

67.     Columbus Code of Ordinances Section 329.18 states that "[a]fter consulting with the city agency, the director of finance and management or designee shall award the contract to the lowest, responsive, responsible, and best bidder." § 329.18.

68.     A "responsive bidder" is one "who has submitted a bid which conforms in all material respects to the requirements set forth in an invitation for bids." Columbus Code § 329.01(ll).

69. A "responsible bidder" is one "who has the capability and capacity in all respects to fully perform the contract requirements and whose experience, integrity, and reliability will assure good faith performance." Columbus Code § 329.01(hh).

70. The "best bidder" is "[t]he bidder who, considering all relevant factors set forth in this chapter, will be, on the whole, best for the public." Columbus Code § 329.01(a).

71. Ohio Revised Code Section 9.312 provides that once a municipal corporation or any other political subdivision adopts, by ordinance or resolution, a policy requiring competitive bid contracts to be awarded to the lowest responsive and responsible bidder, then "a bidder on the contract shall be considered responsive if the . . . proposal responds to bid specifications in all material respects and contains no irregularities or deviations from the specifications which would affect the amount of the bid or otherwise give the bidder a competitive advantage." R.C. § 9.312(A).

72. The standard for evaluating competitive bidding contracts is similar under Ohio Revised Code Section 735.05, which states the director of public service entering into a contract under the supervision of the department of public service must make such a contract "with the lowest and best bidder[.]" R.C. § 735.05.

73. Spin submitted the lowest, responsive, responsible, and best bid.

74. Spin is the lowest bidder because it offered a significantly higher (9 times higher) initial infrastructure fee than Veo and a competitive per ride fee that would deliver an additional $290,000 per year, while also informing Defendants at the December 11, 2024 meeting that Spin would match any per vehicle fee that Veo offered.

75. Spin is a responsive bidder because its bid conformed in all material respects to the requirements set forth in the RFP.

11

76.     Spin is a responsible bidder because it has the capability and capacity in all respects to fully perform the contract requirements and whose experience, integrity, and reliability will assure good faith performance.

77.     Spin is the best bidder because it is on the whole best for the public, if considering all relevant factors set forth in Columbus Code of Ordinances Chapter 329 and all applicable state and local competitive bidding laws and under the RFP's stated evaluation criteria. For example, among other things:

     a.     If Spin had been awarded the 7 points to which it was entitled under the LLO Form, its total points would amount to 94.6. By contrast, had Veo been awarded the 3 points to which it would have been entitled under the LLO Form, Veo's points total would only be 94; and

     b.     As part of follow-up conversations, Spin offered to meet the City's desires, including both for total fleet size and providing a higher percentage of seated devices compared to standup devices.

78.     Defendants' non-award of a contract to Spin and removal of Spin from Columbus and refusal to allow Spin to continue to operate in the City is unreasonable, arbitrary, capricious, and unconscionable, and an abuse of discretion in violation of Defendants' legal obligations.

**COUNT II**
**Review under Ohio Revised Code Section 2506.01**
(In Alternative to Count I)

79.     Spin incorporates by reference the allegations in the preceding paragraphs of this Verified Complaint as if fully rewritten herein.

80.     Ohio Revised Code Section 2506.01 governs appeals from decisions of agencies and political subdivisions and provides that "every final order, adjudication, or decision of any

officer, . . . authority, board, . . . department, or other division of any political subdivision of the state may be reviewed by the court of common pleas of the county in which the principal office of the political subdivision is located . . . ." R.C. § 2506.01.

81.    Defendants' non-award of a contract to Spin and removal of Spin from Columbus, as well as Defendants' refusal to allow Spin to continue to operate in the City, are decisions of a political subdivision of the state that may be reviewed by this Court.

82.    Insofar as the underlying facts involve not only the decision of the Director and the Department, but also an ordinance of the City, Section 2506 applies because:

    a.    That ordinance was based in fact on the decision of the Director;

    b.    The City, considering the process *in toto* and its adherence to the underlying evaluation and scoring, was acting in an administrative, rather than legislative, manner; and

    c.    The ordinance was improperly enacted because it did not connect Columbus' "public peace, health, or safety" to the expiration date of the permits.

83.    Ohio Revised Code Section 2506.04 provides that a court may find that a decision of any division of any political subdivision of the state is illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record.

84.    Under Section 2506.04, a court may reverse, vacate, or modify the decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the Court.

85.    Defendants' decisions must be overturned as they were illegal, arbitrary, capricious, unreasonable, and/or unsupported by the preponderance of substantial, reliable, and

probative evidence on the whole record because Defendants failed to adhere to the terms of the RFP by not considering all criteria the RFP set forth and by evaluating matters outside the scope of the RFP and by not following state and local law.

## COUNT III
### Injunctive Relief

86.    Spin incorporates by reference the allegations in the preceding paragraphs of this Verified Complaint as if fully rewritten herein.

87.    In not awarding a contract to Spin, Defendants failed to comply with state and local law and abused their discretion.

88.    Spin is likely to succeed on the merits in this action because Defendants were required to award a contract to Spin as the lowest, responsive, responsible, and best bidder.

89.    Spin, as a rejected bidder, has no adequate remedy at law and will suffer immediate and irreparable harm, including having to lay off numerous salaried employees, unless Defendants are restrained from (i) contracting exclusively with Veo to the exclusion of Spin and (ii) forcing Spin to cease operating in the City.

90.    No harm will result to others by the grant of an injunction because Spin is not seeking to preclude Veo from operating—Spin merely seeks to continue its operations and provide the public with additional choices of micromobility vendors aside from Veo after the calendar year 2024.

91.    The public interest will be served by issuing an injunction because maintaining the status quo and allowing Spin to operate alongside Veo will promote competition, allow the public more choice in micromobility vendors, and enhance public trust in the competitive bidding process.

92.     Defendants' non-award of a contract to Spin is an improper abuse of discretion because the selection process was unreasonable, arbitrary, capricious, and unconscionable, and is therefore unlawful.

93.     Spin is entitled to a temporary restraining order and a preliminary and permanent injunction to restrain Defendants and their employees and/or agents from contracting exclusively with Veo to the exclusion of Spin and precluding Spin from operating after the end of the 2024 calendar year.

## COUNT IV
## Declaratory Judgment

94.     Spin incorporates by reference the allegations in the preceding paragraphs of this Verified Complaint as if fully rewritten herein.

95.     There exists between Spin and Defendants a real and justiciable controversy.

96.     Speedy relief is necessary to preserve Spin's rights.

97.     Spin is entitled to declaratory judgment that the non-award of a contract to it constitutes a violation of Spin's rights under the applicable competitive bidding laws.

98.     Spin is entitled to declaratory judgment that the contract for professional services for Columbus should properly be awarded to Spin.

99.     Spin is entitled to declaratory judgment that Defendants' non-award of a contract at issue to Spin was an abuse of discretion.

## COUNT V
## Attempted Monopolization in Violation of Federal Antitrust Law

100.    Spin incorporates by reference the allegations in the preceding paragraphs of this Verified Complaint as if fully rewritten herein.

101.    In the alternative to Count I, if Ohio's laws on competitive bidding do not apply here, *see* paragraph 67, then the City is not immune from liability for violating federal antitrust law.

102.    Section 2 of the Sherman Act, 15 U.S.C. § 2 *et seq.*, makes it unlawful for any person or entity to "monopolize, or attempt to monopolize . . . any part of the trade or commerce among the several States."

103.    By not awarding a contract to Spin and instead awarding a contract to only one bidder, Defendants specifically intended to destroy competition or control competition in the Columbus micromobility market, which includes scooters, e-bikes, and other shared mobility devices.

104.    A dangerous probability of success in actually monopolizing the micromobility market in the City of Columbus exists if Defendants are permitted to limit micromobility services providers to only Veo and no other provider.

105.    With only one shared micromobility device company in the market, consumers will be injured for the next three to five years. For example, consumers will be deprived of cheaper or higher quality alternatives, and there will be less micromobility devices available in total for public use.

106.    The injury to consumers is even graver in the short-term. Because Veo is not expected to begin its operations until March 2025, consumers will be without *any* micromobility device options for several months.

107.    Spin will suffer financially as a result of its exclusion from the market: it will lose employees, customers, and the goodwill it has garnered through its operations in Columbus since 2019. These injuries sustained by Spin as a proximate result of Defendants' violation of Section 2

of the Sherman Act are antitrust injuries, that is, injuries of the type the antitrust laws were intended to prevent and that flow from that which makes Defendants' acts unlawful. Spin's injuries flow directly from Defendants' anti-competitive and exclusionary conduct in attempting to monopolize the Columbus micromobility market by only awarding a contract to one bidder, in an attempt to drive competitors, including Spin, from the market.

108.    Defendants' actions in limiting the market to a sole provider amount to attempted monopolization in violation of federal and state law.

HEREFORE, Spin prays for:

A.   A temporary restraining order, preliminary and permanent injunctions to restrain and prevent Defendants from (i) contracting exclusively with Veo to the exclusion of Spin and (ii) compelling Spin to cease micromobility operations at the end of 2024 and pending the final resolution of the action commenced by the filing of this Verified Complaint;

B.   A declaration that Defendants' actions in not awarding a contract to Spin constitute a violation of Chapter 329 of the Columbus Code of Ordinances, Ohio Revised Code Section 9.312, Ohio Revised Code Sections 735.05 and 2506.01, and are therefore illegal;

C.   A declaration that Spin was the lowest, responsive, responsible, and best bidder;

D.   A declaration that Defendants' non-award of a contract to Spin was an abuse of discretion;

E.   An order directing Defendants to award a contract to Spin;

F.   An award of costs and fees, including attorneys' fees, as may be available under law; and

G.   Such other and further relief as the Court deems just and proper.

Respectfully submitted,

_____
John B. Kopf (0075060)
    *Trial Attorney*
Todd M. Seaman (0090839)
**THOMPSON HINE LLP**
41 South High Street, Suite 1700
Columbus, Ohio 43215
Telephone: 614.469.3200
Fax: 614.469.3361 (fax)
John.Kopf@ThompsonHine.com
Todd.Seaman@ThompsonHine.com

*Attorneys for Plaintiff*
*Pheenix USH LLC d/b/a Spin*

and

Michael Klebanov (*motion for pro hac vice admission forthcoming*)
**HUSCH BLACKWELL LLP**
1801 Pennsylvania Ave., NW
Suite 1000
Washington, D.C. 20006-3606
Telephone: 202.378.2363
Fax: 202.378.2319
Michael.Klebanov@huschblackwell.com

## **JURY DEMAND**

Plaintiff Pheenix USH LLC d/b/a Spin hereby demands a jury on all issues triable to a jury.

_____

John B. Kopf
*Attorney for Plaintiff*
*Pheenix USH LLC d/b/a Spin*

IN THE IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **PHEENIX USH LLC** **D/B/A SPIN** 382 NE 191st St PMB 20388, Miami, FL, 33179 | ) ) ) ) ) | Case No. _____ Judge _____ |
| Plaintiff, | ) ) ) | **VERIFICATION** |
| v. | ) ) | |
| **CITY OF COLUMBUS** 90 West Broad Street Columbus, OH 43215; | ) ) ) ) ) | |
| **CITY OF COLUMBUS DEPARTMENT OF PUBLIC SERVICE**; and **KELLY SCOCCO**, in her official capacity as **DIRECTOR OF PUBLIC SERVICE** 111 N. Front Street Columbus, OH 43215, | ) ) ) ) ) | _____ |
| Defendants. | | |

## <u>VERIFICATION</u>

Austin Marshburn, first being duly sworn, declares, under penalty of perjury, that he is the Senior Director at Third Lane Mobility, which is the parent company to Plaintiff Pheenix USH LLC d/b/a/ Spin ("Spin"). Austin Marshburn further declares, under penalty of perjury, that he has read the foregoing Complaint, that based on his personal knowledge and review of relevant business records, which is information he routinely relies on in the ordinary course of business for Spin, he believes the factual allegations in the foregoing Complaint to be truthful and accurate to the best of his knowledge.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on the 19th day of December, 2024.

_____