IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PHEENIX USH LLC D/B/A SPIN, | : | CASE NO. 2:24-cv-4290 |
| Plaintiff, | : : | **Judge Michael H. Watson** |
| vs. | : : | **Magistrate Judge Chelsey M. Vascura** |
| THE CITY OF COLUMBUS, OHIO, *et al.*, | : : : | **Defendants' Memorandum in Opposition to Plaintiff's Motion for Temporary Restraining** |
| Defendants. | : | **Order and Preliminary Injunction** |

## INTRODUCTION

The City of Columbus ("City") engaged in a thorough and transparent process to find a vendor for its micromobility program (*e.g.,* e-scooters on streets and sidewalks).  The City started the process with a request for qualifications and proposals from micromobility providers.  Plaintiff, Pheenix USH LLC d/b/a Spin ("Spin") was one of those that submitted its qualifications.  After a thorough evaluation and selection process—all of which was outlined in the document to which Spin responded—the City did not select Spin.  Spin is now asking this federal Court to intervene and bring the City's local operations to a screeching halt.  But it is not the role of this Court to intervene in local issues.  And even if it were, Spin cannot succeed on the merits of its challenge.

Spin rests its arguments on a faulty premise—that this is a standard, fixed-price competitive bid process under Chapter 329 of the City's codified ordinances ("Code") where the City *must* award a contract to the lowest, responsive, responsible and best bidder.  But that is wrong.  The agreement at issue here is not a procurement governed by the restrictions of Code Chapter 329. *See Independent Taxicab Ass'n v. Columbus Green Cabs, Inc.*, 616 N.E.2d 1144, 1150 (Ohio Ct. App. 1992) (holding that the granting of a license to do business is not "purchasing," and the City

1

"was not required to comply with Columbus City Code Chapter 329."); *see also* Ex. A, Aff. of J. Goodwin ("Goodwin Aff."), ¶7].

This is not a contract for the construction of a building or the purchase of vehicles. In fact, the City is not purchasing anything. Instead, the City is providing the right to the successful offeror to operate a micromobility business under a service level agreement akin to a license ("License"). And in exchange, the vendor will pay the City a share of its revenues and comply with the City's regulations. The City is simply assessing the qualifications of service providers to obtain a License at no cost to the City. The process, therefore, is different than what Spin suggests.

The City's wide discretion should not be second-guessed or disturbed.

## FACTS

In June 2024, the City issued a Request for Proposals for the Columbus and Central Ohio Shared Mobility Program ("RFP"). [ECF No. 9-1 ("RFP"), PageID 113]. The City sought to partner with one or more vendors to administer the City's shared micromobility device program. [*Id.* at PageID 125]. After receiving thousands of complaints related to existing vendors over the previous five years, the City wanted to improve the public's access and experience. [Goodwin Aff., ¶3]. It focused on selecting a vendor that would comply with the City's rules and regulations, specifically ensuring that micromobility devices are not left in unauthorized places on sidewalks and ADA-accessible curb ramps. [*Id.*]

The applicable evaluation criteria and the process for selecting the vendor were outlined in Sections 7 and 8 of the RFP. [RFP, PageID 140–44]. The evaluation criteria included point allocations based on category. No more than 100 points were available for a proposal. [*Id.*].

Six vendors responded to the proposal, including Spin and Veo Ride, Inc. ("Veo"). [Goodwin Aff., ¶4]. The process for selecting the vendor began with an Evaluation Committee

2

("Committee") reviewing and scoring each proposal based on the evaluation criteria. [*Id.*]. The Committee then invited the three highest scoring vendors—which included Spin as the third highest—to the next step in the evaluation process, which allowed the selected entities to engage in further discussions with the Committee. [*Id.*]. Based on the content of the proposals and follow-up discussions, the Committee ranked the vendors based on the criteria in the RFP. [*Id.* at ¶5].

The Committee had the ability to re-score and re-rank based on all the information in their possession, including the presentations and discussions. [RFP, PageID 144]. In fact, after the interviews, Spin moved up to the second spot. [Goodwin Aff., ¶5]. The Committee settled on recommending only one vendor, however, because both Spin and Veo asserted that an exclusive partnership would be most effective. [*Id.* at ¶4]. The Committee therefore recommended Veo to City's Director of Public Service ("Director"), who had discretion to make the final decision. [*Id.*; RFP, PageID 144]. Columbus City Council passed an ordinance authorizing the Director to negotiate with Veo. [Goodwin Aff., ¶7 and Ex. 1 (City of Columbus Ord. No. 3366-2024)].

## ARGUMENT

"Injunctive relief is an extraordinary remedy and is issued cautiously and sparingly." *Barteca Holdings LLC v. Coastal Taco LLC*, 2016 WL 4168018 *1 (N.D. Ohio Case No. 1:16CV1498, Aug. 8, 2016) (citation omitted). Spin's arguments in favor of this extraordinary relief fail for four reasons.

First, Spin cannot show a likelihood of success on the merits because the City followed the applicable process as outlined in the RFP. Spin's reliance on public bidding restrictions is misguided. Second, injunctive relief is inappropriate because Spin has an adequate remedy that it has not exhausted – an administrative appeal of the City's actions under R.C. Chapter 2506. Third, Spin will not suffer irreparable harm because monetary damages are enough to alleviate any

3

alleged harm. Finally, the balance of interests lies with the City (and the public) because the City's competitive and comprehensive selection process led to a vendor that will ensure public safety and convenience.

Spin fails to establish a single factor in its quest to obtain this extraordinary injunctive relief. Thus, Spin's Motion for Temporary Restraining Order and Preliminary Injunction [ECF No. 3 ("Motion")] fails and should be denied.

## I. Standard of review.

Courts consider four factors to determine whether to grant injunctive relief: (1) whether the movant has a strong likelihood of success on the merits; (2) whether there is a threat of irreparable harm to the movant; (3) whether others will suffer harm as a result of the injunction, should it issue; and (4) whether the public interest will be served by the injunction. *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000). "The moving party must demonstrate a right to injunctive relief by clear and convincing evidence." *Am. Sys. Consulting, Inc. v. Devier*, 2007 WL 2670049, *2 (S.D. Ohio No. 2:07-CV-818, Sept. 7, 2007). "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales*, 225 F.3d at 625. Similarly, "a plaintiff must always demonstrate some irreparable injury before a preliminary injunction may issue." *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 104 (6th Cir. 1982). And of course, injunctive relief is not available where there is an adequate state remedy. *United States v. Miami Univ.*, 294 F.3d 797, 816 (6th Cir. 2002).

## II. Spin cannot demonstrate a likelihood of success on the merits because the City followed its announced criteria laid out in the RFP.

The lynchpin of Spin's request for injunctive relief is that the City should have awarded Spin an exclusive license to operate rather than Veo. Spin asserts that the City abused its wide discretion in selecting Veo over Spin. This argument has no likelihood of success.

4

> **A.  Spin's reliance on public bidding regulations and case law is misplaced as this is not a public procurement subject to such regulations and restrictions.**

To support its case for injunctive relief, Spin insists that the City was required to comply with Code Section 329.18, which requires the City to "award the contract to the lowest, responsive, responsible, and best bidder." [Compl. at ¶ 67]. But Spin's position is wrong for several reasons.

First, the restrictions in Chapter 329 do not apply. The case here is substantially similar to the facts in *Independent Taxicab Ass'n v. Columbus Green Cabs, Inc.*, 616 N.E.2d 1144 (Ohio Ct. App. 1992). In *Green Cabs*, "Green Cabs was granted a license or a permission by the city of Columbus to do business at the airport, for which it pays the city $90,000 a year or five cents per enplaned passenger, whichever is greater[,]" after the City underwent a similar process as the one here. *Id.* at 1146-49. A cab company that was not awarded a license sued the City claiming that the City failed to comply with Chapter 329. *Id.* The state appellate court held that the City of Columbus was "not purchasing services" under Chapter 329 of its City Code and therefore "was not required to comply with" its procurement statutes. *Green Cabs*, 616 N.E.2d at 1150. So the court held that the award of this license did not fall under the purchase and procurement requirements. The same is true here. The City's RFP process concluded with a recommendation to issue a license and enter into a revenue sharing agreement. *See* Ordinance 3366-2024. Unlike *Cementech*, the City is not looking for a contract to build a road. *Cementech* is therefore distinguishable and not applicable.

Second, the language on which Spin exclusively relies is found nowhere in the RFP. Instead, the RFP outlines the process of selection, which is consistent with the best value selection process under Section 329.18(D) of the Code.[1] Under the RFP, the City invites proposals for

---

[1] Just because the City used Section 329.18(D) as a guide for the selection of a licensee does not transform this process into a competitive procurement.

5

services and evaluates those proposals on identified evaluation criteria. [*See* RFP, PageID 140–44]. Further, the successful offeror is not guaranteed a contract under this process as the offeror and the City must come to mutually agreeable terms. [*Id.* at PageID 144]. And if they cannot, another offeror as selected by the Director may be engaged. [*Id.*]. In a sealed bid process, on the other hand, there is generally no negotiation as the bidders are providing a fixed price based on the specifications in the Invitation to Bid and contract terms provided by the City. *Compare Cementech with Green Cabs*.

The City was not compelled—as Spin argues—to award the contract to "the lowest, responsive, responsible, and best bidder" under Chapter 329.

**B.    The City complied with its own process outlined in the RFP to which Spin responded.**

When evaluated under the correct process, the City complied with its procurement process.

Under Section 8 of the RFP, the City's Department of Public Service was required to appoint an evaluation committee ("Committee") to evaluate the proposals. [RFP, PageID 144]. The Committee was then required to evaluate all proposals and rank the offerors based on the evaluation criteria specified in the RFP. [*Id.*] After ranking the offerors, the Committee was permitted—but not required—to select two or more of the highest qualified offerors for additional interviews and consideration. [*Id.*]

Following interviews and discussions with the three highest ranked offerors, the Committee was permitted to re-rank those three offerors according to the criteria based on the same evaluation criteria outlined above. [*Id.*] After concluding the evaluations and re-ranking the offerors, the Committee was required to recommend a vendor to the City's Director of Public Service ("Director"). [*Id.*] The Director was then given discretion to accept or reject the Committee's recommendation. [*Id.*] Here, the Director agreed with the Committee and selected

6

Veo. [Goodwin Aff., ¶7]. City Council then passed legislation authorizing the Director to enter into negotiations with Veo for a service level and revenue sharing agreement. [*Id.*; Ordinance 3366-2024; RFP, PageID 144].

The City complied with each and every step of the process to a T. [Goodwin Aff., ¶¶3-7]. Spin's last-ditch attempt for extraordinary relief by alleging the City did not comply with its own rules and regulations fails.

    **C.    Because the City complied with the outlined process, Spin has not met its burden to show clear and convincing evidence that the City abused its wide discretion.**

The City is vested with wide discretion in its processes and decision-making, "and the courts cannot interfere in the exercise of this discretion unless it clearly appears that the city authorities in whom such discretion has been vested are abusing the discretion so vested in them." *Cedar Bay Const., Inc. v. City of Fremont*, 552 N.E.2d 202, 205 (Ohio 1990)[2]. And as Spin concedes, the City is to follow the process in the RFP. [ECF No. 3, PageID 71].

Spin argues that the City abused its discretion because the City should have awarded Spin more points such that Spin was the "the lowest, responsive, responsible, and best bidder." [ECF No. 9, PageID 101]. As discussed, this is the wrong standard. [*See* Section III.A., *supra*]. And under the right standard and evaluation process, whether Spin had the most points is not relevant because the City was not required to award the contract to the "best" offeror.

In short, the City followed its selection process. [*See* Section III.B., *supra*]. And without any other clear and convincing evidence, Spin cannot show that the City abused its discretion. This Court should therefore not interfere with the City's process and decision.

---

[2] The wide discretion given to cities under public biddings like in *Cedar Bay* is even broader here where the selection process is not a procurement or subject to bidding restrictions. *See Green Cabs.*

      **D.**      **Even assuming Spin received a higher score than other applicants, the City was not required to select Spin.**

Spin argues that the City should have awarded Spin an extra seven points under the LLO form, and if the City would have done so, Spin was entitled to the License. Wrong.

First, as discussed above, the City is not required to select the vendor with the highest score. [*See* Section III.A., *supra*]. As discussed in the RFP, the evaluation scoring only affords the multiple vendors with the highest scores the right to provide additional information to the City through the interview and discussion process. [*See* RFP, PageID 144]. Nothing more.

Second, Spin's hyper focus on the LLO is a red herring. Indeed, the only location requirement is the local presence and staffing requirement in Sections 2.1 and 7.1, which requires all vendors to commit to establishing a local presence. [*Id.* at PageID 128, 140]. Veo complied with this requirement. [Goodwin Aff., ¶7].

**III.**    **Spin cannot obtain injunctive relief because it has an adequate state law remedy it has not exhausted through the administrative appeal process under R.C. Chapter 2506.**

Spin's request for injunctive relief fails because, as it concedes, it has an available state law remedy that it has not exhausted—an administrative appeal of the City's administrative decision under R.C. Chapter 2506.

      **A.**      **An administrative appeal is an adequate state law remedy.**

The Supreme Court "has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 311–320, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982).

"An administrative appeal generally constitutes an adequate remedy in the ordinary course of law[.]" *State ex rel. Natl. Emps. Network All., Inc. v. Ryan*, 925 N.E.2d 947, ¶ 1 (Ohio 2010). Under R.C. 2506.01(A), every final decision from a political subdivision "may be reviewed by the court of common pleas of the county" where the political subdivision is located.

8

Spin has conceded that an administrative appeal under R.C. Chapter 2506 is an available remedy. [*See* ECF No. 9 ("Compl."), PageID 102–03]. Because this remedy is available, Spin's request for injunctive relief fails on its face.

### B. Spin has not exhausted this adequate remedy.

Moreover, a party typically must exhaust any administrative remedies before it is entitled to declaratory or injunction relief. *Clagg v. Baycliffs Corp.*, 695 N.E.2d 728, 731 (Ohio 1998) ("When … the affirmative defense of failure to exhaust administrative remedies is applicable and has been timely raised and maintained, a court will deny declaratory and injunctive relief.").

As explained above, Spin has conceded that an administrative appeal under R.C. Chapter 2506 is an available remedy. But Spin has not alleged that it has sought this adequate relief or exhausted this remedy in the Franklin County Court of Common Pleas under R.C. 2506.01. This is fatal to Spin's request for extraordinary injunctive relief.

### C. Spin cannot rely on *Cementech* to save its injunction request.

To the extent that Spin relies on *Cementech, Inc. v. City of Fairlawn*, 849 N.E.2d 24 (Ohio 2006) to suggest that an administrative appeal is not adequate, that reliance is misplaced.

Unlike *Cementech*, the case here does not relate to a competitively bid "project" where the "lowest and best" bidder is awarded a public contract (*e.g.*, the construction of a public road) for money. As discussed above, the "winning" vendor here is simply granted a License to operate its business in the City's rights of way, a service level agreement, and revenue sharing. [Goodwin Aff., ¶7]. The City does not pay the vendor anything—to the contrary, the winning vendor is to share its profits with the City. [*Id.*; *see Green Cabs*].

9

**IV.  Spin will not suffer irreparable harm because its alleged damages can be sufficiently remedied by monetary damages.**

Spin cannot establish by clear and convincing evidence that it will suffer irreparable harm without an injunction. Importantly, "a plaintiff must always demonstrate some irreparable injury before a preliminary injunction may issue." *Friendship Materials, Inc., supra*.

Injunctive relief "is not appropriate where an ultimate award of monetary damages will suffice." *CompuServe Inc. v. Cyber Promotions, Inc.*, 962 F. Supp. 1015, 1027 (S.D. Ohio 1997), citing *Montgomery v. Carr,* 848 F. Supp. 770 (S.D. Ohio 1993).

Spin alleged that "Spin will suffer economic losses well in excess of $75,000.00," [Compl. At ¶ 6] and has asked this Court to award it those purported monetary damages. Because by Spin's own admission monetary relief is an available remedy, injunctive relief should not be granted.

And Spin's reliance on *Cementech* for this factor is misplaced. As discussed, *Cementech* involves a traditional public bidding issue related to a public project, while the case here involves the selection of a vendor to hold a license. Compare *Cementech* with *Columbus Green Cabs*.

**V.  Issuing injunctive relief would harm the public and the winning vendor.**

Issuing an injunction would harm Veo (the winning vendor) and the public for two reasons. First, issuing injunctive relief would delay the micromobility program. Second, issuing injunctive relief would subject the public to Spin's continued disregard for removing unauthorized devices from sidewalks and ADA-accessible curb ramps. As explained earlier, the City has received thousands of complaints for these violations. [Goodwin Aff., ¶3]. Spin is among the most serious offenders, accounting for hundreds of complaints. [*Id.* at ¶6].

## CONCLUSION

For the reasons herein, the City urges the Court to deny Spin's requested injunctive relief.

Respectfully submitted,

*/s/ Yazan S. Ashrawi*
Yazan S. Ashrawi (0089565), *Trial Attorney*
Stephen P. Withee (0069176)
**FROST BROWN TODD LLP**
10 West Broad Street, Suite 2300
Columbus, OH  43215
(614) 464-1211 / (614) 464-1737 (fax)
yashrawi@fbtlaw.com
swithee@fbtlaw.com

Joshua M. Cartee (0095526)
Assistant City Attorney, General Counsel Section
**City of Columbus, Department of Law**
77 N. Frost Street
Columbus, OH 43215
(614) 645-5395
JMCartee@columbus.gov

*Attorneys for Defendants*

11

## **CERTIFICATE OF SERVICE**

I certify that on this 23rd day of December 2024, I electronically filed the foregoing Notice of Appearance with the U.S. District Court, Southern District of Ohio, Eastern Division by using the CM/ECF system.

*/s/Yazan S. Ashrawi*
Yazan S. Ashrawi

EN21858.Public-21858   4907-5621-7097v2