**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **PHEENIX USH LLC D/B/A SPIN**, | ) |
| Plaintiff, | ) Case No. 2:24-cv-4290v |
| v. | ) Judge Michael H. Watson |
| **CITY OF COLUMBUS, et al.**, | ) Magistrate Judge Chelsey M. Vascura |
| Defendants. | ) **REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

**INTRODUCTION**

The City does not contest that come January 1, 2025, there will be no rentable e-scooters or e-bikes in the City of Columbus, at least until March 2025. Compl. ¶ 60. This will adversely impact the public interest, as on average about 3,000 people in Columbus rely on e-scooters or e-bikes every day, including for commuting to work. What's more, Spin will have to lay off dozens of its employees. *Id.* ¶ 89. And Spin will forfeit its customer good will and market presence. *Id.* ¶ 107; TRO Motion at 12. The Sixth Circuit recognizes these are all irreparable injuries. TRO Motion at 12. Columbus will have to wait months while Veo sets up a monopoly over the micromobility device market. *Id.* ¶ 60.

That is, unless this Court grants Spin's Motion for a TRO. If the Court grants Spin's Motion, each of these harms will be totally avoided, and at no cost to Defendants. While the balance of harms in this case is alone sufficient to warrant injunctive relief, such relief is all the more warranted in light of the strength of Spin's arguments on the merits. Spin has far exceeded the requirement of raising "serious questions going to the merits." *Jones v. Caruso*, 569 F.3d 258, 277 (6th Cir. 2009).

The Sixth Circuit "has recognized that the purpose of a TRO 'is to preserve the status quo so that a reasoned resolution of a dispute may be had.'" *Smoot Construction of Washington, D.C. v. Smoot Corp.*, 2022 WL 2681329, at *2 (S.D. Ohio 2022) (Watson, J.) (citing *Proctor & Gamble Co. v. Bankers Jr. Co.*, 78 F.3d 219, 226 (6th Cir. 1996)). Spin asks that this Court preserve the status quo—that people in Columbus continue to have e-scooters and e-bikes to use—pending a reasoned resolution of this dispute.

The Court should grant Spin's Motion.

## ARGUMENT

**I. Spin is likely to prevail on the merits of its claims, and at least has raised serious questions going to the merits.**

Defendants demand more from Spin than is required at this stage, including suggesting that Spin must establish its right to injunctive relief by "clear and convincing evidence." *E.g.*, Opp. at 7, 10. Yet that is not the prevailing standard in the Sixth Circuit on a motion for a TRO, at least outside the context of enforcing restrictive covenants. Defendants rely on an unpublished case (which did not involve a TRO), which in turn relies on two unpublished cases. *See Am. Sys Consulting Inc. v. Devier*, 2007 WL 2670049, at *2 (S.D. Ohio Sept. 7, 2007) (citing *Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 969 (6th Cir. 2002); *Honeywell, Inc. v. Brewer-Garrett Co.*, 145 F.3d 1331, 1998 WL 152951, at *3 (6th Cir. 2002)). The only citations *Herbst* or *Honeywell* have for the "clear and convincing" language are cases from Ohio state court. *See id.* But federal law, not state law, governs the standard on a TRO. *See Southern Milk Sales, Inc. v. Martin*, 924 F.2d 98, 102 (6th Cir. 1991) (applying federal law because the question of a preliminary injunction is "procedural" as the purpose of a preliminary injunction "is merely to preserve the relative positions of the parties until a trial on the merits can be held").[1]

---

[1] Even so, Spin has shown clear and convincing evidence of irreparable harm. *See infra.*

At most, Spin must show "serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if the injunction is issued." *Jones*, 569 F.3d 258 at 277; *see also W.W. Williams Co. v. Google, Inc.*, 2013 WL 3812079, at *4 (S.D. Ohio 2023) (Watson, J.) ("[A] strong showing of irreparable harm, decidedly outweighing harm to the defendant, may justify an injunction even where the movant cannot make a strong showing of likelihood of success on the merits, as long as the plaintiff can show serious questions going to the merits of the suit."). Spin satisfies this burden.

### A. Defendants cannot escape the competitive bidding laws they chose to govern in the Terms and Conditions and Applicable Laws in their RFP.

Defendants argue competitive bidding laws do not apply, and only the terms of the RFP govern, with which the City complies. But the City's main contention—that competitive bidding laws do not apply—is contradicted by the law and terms that the City chose to govern the RFP. The "Terms and Conditions" of the RFP declared, in a provision titled "Applicable Laws," that "the law of competitive bidding" govern the RFP:

> **APPLICABLE LAWS**
> The Revised Code of the State of Ohio, the Charter of the City of Columbus, and all City ordinances insofar as they apply to the laws of competitive bidding, contracts, purchases, and wage theft prevention, are made a part hereof.

Ex. A to Compl. at 5. In the RFP, moreover, the City cited to its Code governing competitive bidding. It even cited to the exact City Code it now hopes to evade—Section 329. *See, e.g.*, Ex. A at 33 (citing to Section 329.11 to explain the Department of Public Service may issue addenda to cancel any invitation for bids); *id.* at 25 (proposals will be evaluated based on Chapter 329).

The City repeatedly declared Ohio and Columbus laws on competitive bidding were applicable, including selecting them as the governing law. It cannot now escape that selection and contradict their choice of law. *See Danis Clarkco Landfill Co. v. Clark Cty. Solid Waste Mgt. Dist.*, 653 N.E.2d 646, 657 (Ohio 1995). In *Danis*, the defendant incorporated into its RFP negotiation

3

process several components also required by statutory competitive bidding. The court held the defendant "was bound to adhere to these provisions, as well as other conditions and provisions it had itself set forth in the RFP, as a public authority or administrative agency may by its actions commit itself to follow rules it has itself established, including rules governing the evaluation of proposals where statutory competitive bidding is not required." *Id.*; *accord Waste Mgt., Inc. v. Wisconsin Solid Waste Recycling Auth.* 267 N.W.2d 659, 667 n.4 (Wis. 1978) (although not subject to competitive bid statutes, award of contract for design, construction, and operation of a solid waste recycling facility was governed by proposal-negotiation rules set forth in RFP). And *Green Cabs*, on which Defendants rely, is inapt here: the defendant there never suggested applying, let alone chose, competitive bidding law. *Compare Indep. Taxicab Ass'n of Columbus v. Columbus Green Cabs, Inc.*, 616 N.E.2d 1144, 1146 (Ohio App. 1992) *with supra* p. 3.

The City does not contend that it complied with state and local competitive bidding laws. It does not because it cannot. As demonstrated in the Motion, the City disregarded stated evaluation criteria and applied unannounced evaluation criteria in violation of state and local law. Spin has a significant likelihood of success on the merits of its claims.

> **B.  Even absent competitive bidding laws, Spin has raised serious questions on the merits that Defendants have violated other federal, state, and City law.**

Even if Defendants could escape the competitive bidding laws they selected, they still are subject to the basic law governing the conduct of municipalities. Defendants state that the City is providing a "license" to operate devices and suggest that because the RFP permitted the Director the discretion to select a winner, there were no other limits on the Director's powers. Opp. at 6, 8.

But Defendants are wrong on the law. The discretion the RFP provides does not nullify federal, Ohio, and City law. *First*, as to Ohio and City law, even setting aside competitive bidding laws, the City's decision-making still must not be illegal, arbitrary, capricious, unreasonable, or

4

unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. *See Three Wide Ent. v. Athens Bd. of Zoning Appeals*, 2011-Ohio-2304, ¶ 8, 194 Ohio App. 3d 1, 4, 954 N.E.2d 191, 193 (Ohio App. 2011) (recognizing standard applicable to municipal administrative decisions); *Litva v. Richmond*, 874 N.E.2d 1243, 1247 (Ohio App. 2007) (recognizing that municipal ordinance is unlawful if "unreasonable [or] arbitrary"); *see also* 9 McQuillin Mun. Corp. § 26:122 (3d ed.). Spin's Verified Complaint and TRO Motion raise serious questions showing Defendants' decision-making was arbitrary and unreasonable because Defendants failed to consider the RFP's stated evaluation criteria and applied unannounced evaluation criteria. *See* Compl. Counts II-IV.

- The City considered various factors that were unannounced evaluation criteria, including the performance in a different market (Dublin, Ohio) of a separate and different company from Spin—Bird. Compl. ¶¶ 37-47. It is an abuse of discretion to award a contract or license using rules that are unannounced or not the same for all bidders. *See Dayton ex rel. Scandrick*, 423 N.E. 2d at 1098 (finding the use of an unannounced criterion in selecting a bid was arbitrary and an abuse of discretion); *Hardrives Paving & Constr. v. City of Niles*, 650 N.E.2d 482, 484-85 (Ohio Ct. App. 1994) (finding an abuse of discretion and concluding an injunction is the only form of relief available to a disappointed bidder to protect that bidder and the public from harm). The City does not address or justify its consideration of unannounced evaluation criteria.

- Defendants chose not to use the LLO Form as a basis for awarding any points despite having announced they would do so. Compl. ¶¶ 32-37. The City replies the only "requirement" for location and staffing was in Sections 2.1 and 7.1. Opp. at 8.

5

>   But that is not responsive. The City announced it would use the LLO Form but then failed to use it. Such arbitrary and capricious behavior likely violates Ohio law. *State ex rel. Associated Builders & Contrs. of Cent. Ohio v. Franklin Cty. Bd. of Commissioners*, 926 N.E.2d 600, 606 (Ohio 2010) (finding that county board of commissioners "failed to exercise sound discretion with respect to the manner in which it applied its evaluation criteria" to the bid at issue where the board misapplied one of its criteria).
>
> - Defendants also failed to score six sub-categories of the "Understanding of Project" metric, making it impossible for the public to know how much consideration was given to each sub-category and whether they were properly weighted, even though Defendants had announced in the RFP that points would be awarded based on answers to all "subcategories." Ex A. Compl. at 30.

Ultimately, the City's repeated discussion of its compliance with *other* parts of the RFP does nothing to cure its failure to comply with various other key terms of its RFP.

*Second*, Defendants' decision will create an illegal monopoly and violate federal antitrust law. Compl. ¶¶ 100-08 (Count V). The City does not contend otherwise. And an illegal monopoly was not the necessary outcome of the City's RFP process. The City's opposition appears to admit the Director had such wide discretion that she did not have to choose one vendor. *See* Opp. at 3, 6.

**II.    R.C. Chapter 2506 does not preclude a TRO because 2506 does not require exhausting remedies and the remedy available is not adequate to defeat the TRO.**

The City argues that R.C. 2506.01 precludes a TRO. Opp. at 8-9. This argument is wrong for two separate reasons.

6

*First*, contrary to what the City implies, a party need not exhaust remedies under R.C. 2506.01. Because "the plain language of [that] statute is permissive and not mandatory," a party in Spin's shoes "had the right but was not required" to pursue an R.C. 2506.01 remedy before seeking other relief in federal court. *Howard v. City of Beavercreek*, 108 F. Supp. 2d 866, 871 (S.D. Ohio 2000), *aff'd*, 276 F.3d 802 (6th Cir. 2002). Indeed, review under R.C. 2506.01 "is in addition to any other remedy of appeal provided by law." R.C. 2506.01(B).

The City's citation to *Ryan* is inapposite twice over. The full quote from that per curiam opinion is: "An *administrative* appeal generally constitutes an adequate remedy in the ordinary course of law that precludes a writ of *mandamus*." *State ex rel. Natl. Emps. Network All., Inc. v. Ryan*, 925 N.E.2d 947 (Ohio 2010) (emphases added). But Spin does not seek mandamus. And R.C. 2506.01 is not an administrative appeal (i.e., an appeal *within* an administrative agency, *before* a right to review in court).

In all events, Spin also includes a count under R.C. 2506.01 in its complaint here. The City does not challenge this Court's supplemental jurisdiction over state law claims. Nor does the City cite any authority suggesting that this Court cannot adjudicate Spin's R.C. 2506.01 claim. This Court should do so.

*Second*, the remedy available under R.C. 2506.01—an order affirming, reversing, vacating, or modifying the City's decision, R.C. 2506.04—is not adequate to defeat *the TRO*. Spin may ultimately prevail on its R.C. 2506.01 claim, and a court may eventually reverse the City's decision. But getting to that point will take months. *See J.L. Spoons, Inc. v. City of Brunswick*, 18 F. Supp. 2d 775, 779 (N.D. Ohio 1998) ("Chapter 2506 does not require a court to rule on the merits of an appeal within a specified period of time; rather, the appeal proceeds as any other civil

7

action proceeds."). Only a TRO would prevent irreparable harm and protect the public interest *in the interim*, between now and final adjudication.

The City misunderstands this point. It invokes *Clagg*, but at best that case speaks to final and permanent relief. Instead, even in cases involving review under R.C. 2506.01, courts can and do impose TROs and preliminary injunctions while the claim is pending. *E.g.*, *Cardinale v. Ottawa Reg'l Plan. Comm.*, 627 N.E.2d 611, 612, 615 (Ohio App. 1993). The City also discusses *Cementech*, but that case has nothing to do with exhaustion. (Though it does support Spin for other reasons. *See infra*.)

In sum, R.C. 2506.01 stands as no impediment to this Court adjudicating this case on the merits—and as no impediment to a TRO now.

**III.     Spin will suffer irreparable harm in the absence of a TRO.**

Defendants characterize Spin's threatened injuries as purely monetary. Opp. at 10. But both Ohio law and Sixth Circuit precedent are to the contrary. The primary harm Spin faces is lost consumer good will and market presence, neither of which is compensable through monetary relief alone. *Lexington-Fayette Urb. Cnty. Gov't v. BellSouth Telecommc'ns, Inc.*, 14 F. App'x 636, 639–40 (6th Cir. 2001) (quoting *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992)) ("[L]oss of 'customer good will and loss of fair competition (competitive losses) amounts to irreparable injury because the damages flowing from such losses are difficult to compute . . . and likely to irreparably harm an employer.'"). So too, having to lay off employees is irreparable harm. *See NACCO Materials Handling Grp., Inc. v. Toyota Materials Handling USA, Inc.*, 246 F. App'x 929, 943-44 (6th Cir. 2007) (holding that plaintiff would suffer irreparable injury in part because it would be "forced to terminate up to forty percent of its employees" and that "the profitability generated by [these terminated] employees . . . could not be easily calculated or compensated with monetary relief").

And on its competitive bidding claim, even if it ultimately succeeds on this claim, Spin would not be entitled to recover monetary damages (aside from some limited costs), because those laws generally permit injunctive relief, not monetary damages:

> While allowing lost-profit damages in municipal-contract cases would protect bidders from corrupt practices, it also would harm the taxpayers by forcing them to bear the extra cost of lost profits to rejected bidders. Thus, the purposes of competitive bidding clearly militate against allowing lost-profit damages to rejected bidders….. Rather, a rejected bidder is limited to injunctive relief.

*Cementech, Inc. v. City of Fairlawn*, 849 N.E.2d 24, 27 (Ohio 2006).

The City argues that because Spin's jurisdictional allegations plead economic losses in excess of $75,000, Spin has "asked this Court" to award monetary damages and thus should not get injunctive relief. *First*, the City's argument requires misconstruing Spin's Complaint. Spin has not requested monetary damages in its prayer for relief. *See* Compl. at 17 (requesting injunctions, declarations, orders, and costs and fees). Spin's allegations about the amount in controversy for diversity jurisdiction are not a request to the Court to award such monetary damages. *See, e.g.*, *Lodal, Inc. v. Home Ins. Co. of Ill.*, No. 95-2187, 1998 WL 393766, at *2 (6th Cir. June 12, 1998) ("[T]he amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation.").

*Second*, even if those allegations were requests for monetary damages, it does not follow that Spin's damages are all recoverable or reparable. *See, e.g.*, *Hoover Transp. Servs., Inc. v. Frye*, 2002 WL 31409888, at *3-4, 11 (S.D. Ohio July 17, 2002), *aff'd*, 77 F. App'x 776 (6th Cir. 2003) (granting plaintiff's motion for preliminary injunction after concluding diversity jurisdiction was proper, notwithstanding that plaintiff also brought claims for monetary damages). The lost customer good will, the lost market presence, the lost employees, and the competitive bidding claim are all irreparable injuries in the absence of a TRO.

### IV. Neither Defendants nor the public will be harmed by a TRO—in fact, the TRO will benefit the public.

In an attempt to show that the public generally will be harmed by a TRO, Defendants claim, in one short line, that a TRO would "delay the micromobility program." Opp. at 10. Defendants cite nothing in support. In fact, the evidence shows they have it backwards. Defendants do not dispute the Verified Complaint's allegation that Columbus will be deprived of any e-scooter or e-bike options for months because Veo is not expected to begin operating until at least March 2025. Compl. ¶ 60. About 3,000 people in Columbus on average rely on e-scooters or e-bikes for transportation, including for getting to work. Ex. A at 1 (Declaration of Austin Marshburn). Even once residents regain access to these devices, they will be subjected to a City-sponsored monopoly, depriving them of any meaningful choice over which micromobility providers they use. Defendants do not dispute that is the eventual outcome of their path.

Defendants also argue that a TRO would subject the public to devices impeding sidewalks and ramps. Opp. at 10. But Defendants do not include the dates of any such complaints or whether such complaints persist. In reality, any such complaints have substantially tapered off since May 2024. Ex. A at 1-2. In contrast, the selected operator (Veo) was *twice* forced to suspend operations in Los Angeles due to such issues in the past year. *Id.* In any event, depriving about 3,000 Columbites of critical transportation every day for months to come creates a far greater harm to the public. A TRO before January 1, 2025 will benefit the public.

### CONCLUSION

Spin requests that the Court grant Plaintiff's Motion for Temporary Restraining Order before January 1, 2025.

Respectfully submitted,

/s/ John B. Kopf
Michael Klebanov (*pro hac vice admitted*)
**HUSCH BLACKWELL LLP**
1801 Pennsylvania Ave., NW
Suite 1000
Washington, D.C. 20006-3606
Telephone: 202.378.2363
Fax: 202.378.2319
Michael.Klebanov@huschblackwell.com

and

John B. Kopf (0075060)
   *Trial Attorney*
Todd M. Seaman (0090839)
**THOMPSON HINE LLP**
41 South High Street, Suite 1700
Columbus, Ohio 43215
Telephone: 614.469.3200
Fax: 614.469.3361 (fax)
John.Kopf@ThompsonHine.com
Todd.Seaman@ThompsonHine.com

*Attorneys for Plaintiff*
*Pheenix USH LLC d/b/a Spin*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 23, 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

/s/ John B. Kopf
One of the Attorneys for Plaintiff